UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY JAY KAPRELIAN,

       Plaintiff,

  v.                                                           Case No. 14-CV-546

JOHN BARRETT,

       Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Timothy Jay Kaprelian, an inmate at Dodge Correctional Institution, filed this civil rights action under 42 U.S.C. § 1983, alleging his constitutional rights were violated. He claims Defendant John Barrett, the Clerk of the Milwaukee County Circuit Court, denied his constitutional right of access to the courts by failing to process a notice of appeal in a state action Plaintiff had initiated in the Milwaukee County Circuit Court. Both parties have moved for summary judgment. For the reasons below, Plaintiff's motion will be denied and Barrett's motion will be granted.

      To place Krapelian's case in context, it is necessary to recount the facts surrounding the crimes for which he is currently serving a state sentence and his previous federal civil rights action arising out of those same facts. Plaintiff is currently serving a fifty year sentence for the sexual assault and false imprisonment of Laurie Kemp, his former girlfriend whose house he was residing in at the time. The charges were based upon Kemp's complaint which was corroborated by physical evidence, including a videotape of the assault, that was seized from the house after Kemp explicitly consented to their entry and search for evidence. Kemp pled no contest to the charges after his

motion to suppress the physical evidence seized from the home was denied by the circuit court. The circuit court denied the motion on the grounds that Kemp had lawfully consented to the police entry and search, and in addition, the seizure of the evidence was justified by exigent circumstances. The Wisconsin Court of Appeals affirmed, and a petition for review was denied by the Wisconsin Supreme Court.

In June 2009, while his state appeal was pending, Plaintiff sued the Village of Mount Pleasant, Wisconsin, its police department, and several individual officers for $25 million claiming that the investigating officers had violated his Fourth Amendment rights by seizing and viewing his videotapes without a warrant. *Kaprelian v. Bowers et al.*, Case No. 09-CV-609. That action, which was assigned to Judge Stadtmueller, was dismissed on summary judgment on the ground that the search and seizure of the evidence was lawful because of Kemp's consent. On appeal, the Seventh Circuit affirmed in an unpublished order on the ground that the state court's determination of the issue was entitled to preclusive effect in Plaintiff's federal action. *Kaprelian v. Bowers et al.*, No. 11-1582 (7th Cir. Jan. 10, 2012).

In 2012, Plaintiff filed a civil lawsuit in Milwaukee County Circuit Court against seven defendants claiming they had submitted perjured affidavits in his federal civil rights suit. *Kaprelian v. Ford et al.*, Milw. Co. Case. No. 2012CV5204. In the eleven months after Plaintiff filed the state action, he claims the circuit court judge to which his case was assigned and that judge's law clerk refused to respond to his inquiries, grant his hearing requests or rule on his motions. The case was ultimately transferred to another branch of the circuit court and dismissed with prejudice on February 20, 2013. Plaintiff's filing fee was refunded. Plaintiff filed a motion to reconsider the dismissal with prejudice, which was denied, and he tried to file a notice of appeal, but the notice was never actually

filed.

On May 12, 2014, Plaintiff filed two civil rights actions in this court alleging his right to access the courts had been denied. One of those actions, brought against the state circuit court judge and his law clerk, was dismissed because the defendants were immune from suit. *Kaprelian v. Conen,* Case No. 14-C-547, Order of Dismissal, ECF No. 8 (E.D. Wis. June 10, 2014). The other was the instant action against the Clerk of the Milwaukee County Circuit Court, John Barrett, alleging Barrett refused to file Plaintiff's notice of appeal from the February 20, 2013 dismissal of his state court action. Citing *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004), this court allowed the latter case to proceed to discovery because it was unclear based on the limited information in the complaint "why Barrett refused to file Kaprelian's notice of appeal, assuming he did refuse, and if Barrett did in fact refuse, whether the State of Wisconsin provided an adequate opportunity to rectify the error." (ECF No. 8 at 4.)

The facts surrounding the unfiled notice of appeal have now been developed. According to Plaintiff, on March 4, 2013, he attempted to mail the notice of appeal, along with several other documents, to Barrett, Barrett's counsel (who was representing the defendants in the state case at the time), the Clerk of the Wisconsin Court of Appeals and another unidentified recipient. On May 8, 2013, "while waiting for Clerk Barrett to file the Notice of Appeal," Plaintiff sent a complaint to Chief Justice Abrahamson of the Wisconsin Supreme Court in her capacity under the Wisconsin Constitution as administrative head of the judicial system. Plaintiff complained that "he was denied access to present and prosecute his civil case" in the 2012 state action. On June 3, 2013, Plaintiff petitioned the Wisconsin Supreme Court to commence an original action under Wis. Stat. § 809.70. The supreme court denied the petition ex parte on November 26, 2013. (Pl.'s Br., ECF No. 17 at

3

3–5.)

According to Barrett, neither he nor any clerk's office employees or Barrett's attorney have any indication that they received Plaintiff's March 4 mailings. Plaintiff admits, of course, that he does not know whether the clerk's office actually received his notice of appeal. (ECF No. 41-1 at 28.) Plaintiff did testify at his deposition that on March 4, he tried to send the materials through the prison mailing system as he had done with many other legal papers. He testified that when he did not receive the usual receipt, he submitted an information request form to prison officials, who responded as follows: "Looks like two needed extra postage and went out. The other two may have had adequate postage and went out. Sorry that's all I can tell you with the info I have." (Kaprelian Dep. Ex. 6, ECF No. 41-1 at 77.) In his summary judgment papers Plaintiff argues these facts show he is entitled to relief because "the law presumes delivery of a properly addressed piece of mail" and Barrett's "bare assertion of non-receipt" is insufficient to rebut this presumption of delivery. (ECF No. 51 at 2) (citing *Vincent v. City Colleges of Chicago*, 485 F.3d 919 (7th Cir. 2007); *United States v. Ekong*, 518 F.3d 295 (5th Cir. 2007)).

In reply, Barrett argues Plaintiff is not entitled to any presumption of delivery because the record shows the March 4 materials were not properly addressed to the Civil Appeals Division of the Milwaukee County Circuit Court as required by local rule. Barrett also argues that Plaintiff himself was concerned about whether his materials were ever mailed from Dodge Correctional Institution due to possible insufficient postage, as evidenced by his information request. Barrett also argues Plaintiff has changed his story in light of these issues with his attempted mailing and now maintains, without any evidentiary support, the materials referenced in response to his information request form were actually other materials, and his notice of appeal did have sufficient postage.

4

(ECF No. 55 at 2–3.) In addition, Barrett argues that Plaintiff's § 1983 claim against Barrett in his individual capacity, which is Plaintiff's only claim in this case, is fatally flawed because the record fails to raise a genuine issue as to whether Barrett had any personal involvement whatsoever in Plaintiff's state case, much less an issue as to whether Barrett *intentionally* interfered with Plaintiff's access to courts.

Barrett has the stronger argument on each of these points and therefore Barrett's motion for summary judgment will be granted. Summary judgment is proper when a party bearing the ultimate burden of proof as to an element of his or her claim fails to raise a genuine dispute of material fact as to that element. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate in this case for any one of the following reasons.

First, Plaintiff is not entitled to a presumption of delivery under the mailbox rule because he has not shown he actually placed a properly addressed piece of mail into the "mailbox." *Cf. Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) ("Proof that a letter *properly directed was placed in a U.S. post office mail receptacle* creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed." (emphasis added)). Second, Plaintiff has failed to raise an issue as to Barrett's personal involvement in the alleged violation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) ("Under any theory, to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." (internal quotes omitted)). Third, Plaintiff has also failed to raise an issue as to Barrett's intentional interference of Plaintiff's access to courts. *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999) ("It is well established that negligent conduct by a government official is

5

insufficient to support a claim under § 1983." (citing *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)); *see also Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992) ("Nevertheless, it is possible, and we assume it for purposes of this review, that a mistake was made or the complaint mislaid at the clerk's office by the clerks. If so, this lapse was a mere isolated incident of negligence and, under the facts set forth here, does not rise to the level of a constitutional violation actionable under section 1983."); *Newsome v. Gilmore*, No. 97-1441, 1999 WL 313766, *3 (7th Cir. May 11, 1999) (unpublished) ("The misdelivery of the petition appears to be an isolated incident attributable more to mere mistake or lack of due care rather than any purposeful plan to obstruct Newsome's access to the courts.").

Additionally, and more fundamentally, the undisputed facts in this case demonstrate conclusively that Plaintiff was *not* denied access to the courts. Rather, he was able to file many papers in the circuit court. He was able to petition the Wisconsin Supreme Court for relief. The fact that his requests for relief were not successful does not mean that he was denied access to courts. Moreover, even assuming someone in the clerk's office expressly refused to file an otherwise proper notice of appeal, the availability of a writ of mandamus under Wisconsin law provides an adequate remedy to Plaintiff. *See* Wis. Stat. §§ 809.51 & 809.71; *Snyder v. Nolen*, 380 F.3d 279, 292 (7th Cir. 2004) (Easterbrook, J., concurring in part and concurring in judgment) ("[E]rrors of state law differ from offenses against the Constitution. Clerks (and judges too) are fallible; litigants have 'access' to the court when there are avenues to correct mistakes."); *see also Kincaid*, 969 F.3d at 602 (availability of writ of mandate under Indiana law provided adequate state remedy to plaintiffs who claimed denial of access to courts when clerks refused to file complaint).

6

Finally, Plaintiff's access-to-courts claim appears to be flawed because Plaintiff has failed to show how the alleged interference precluded him from litigating a meritorious claim. The Supreme Court discussed the importance of this aspect of a "backwards-looking" access-to-courts claim, such as this one, in *Christopher v. Harbury*, 536 U.S. 403 (2002). The Court noted that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 414 (footnote omitted). Here, Plaintiff's lost claim is that the defendants in the $25 million lawsuit submitted false affidavits in defending against Plaintiff's claim that the police unlawfully seized and viewed his pornographic videos. As the Seventh Circuit held, Plaintiff's claim in the $25 million case was barred by the state court determination of the same issue. Thus, the defendants's sworn submissions to the federal court had no impact on his claim. He would have lost in any event. Plaintiff's failure to show he lost an opportunity to litigate a meritorious claim constitutes yet another independent ground for dismissal of this case.

For all of these reasons, Defendant's motion for summary judgment is granted and Plaintiff's motion is denied. The court has also reviewed Plaintiff's motions for sanctions (ECF Nos. 30, 37 & 57) and determines that they are without merit. Those motions are denied. The clerk is directed to enter judgment accordingly.

SO ORDERED this  20th  day of January, 2015.

              s/ William C. Griesbach
              William C. Griesbach, Chief Judge
              United States District Court